UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **PAUL SALEBA** | : | Case No.: 1:20-cv-634 |
| 537 Garden Way | : | |
| Edgewood KY, 41017 | : | Judge _____ |
| | : | |
| (individually and on behalf of all others | : | |
| similarly situated) | : | **COLLECTIVE COMPLAINT FOR** |
| | : | **AGE DISCRIMINATION WITH** |
| Plaintiff, | : | **JURY DEMAND ENDORSED** |
| v. | : | **HEREON** |
| | : | |
| **MEDPACE, INC.** | : | |
| 5375 Medpace Way | : | |
| Cincinnati, Ohio 45227 | : | |
| | : | |
| Defendant. | : | |

## I. INTRODUCTION

1. This is an action arising under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq, ("ADEA") as amended by the Older Worker Benefit Protection Act, 29 U.S.C. § 626 et seq., to correct unlawful employment practices on the basis of age, and provide appropriate relief to Plaintiff and a class of former employees who have been adversely affected by these unlawful employment practices.

2. Plaintiff Paul Saleba, age 67, was an employee of Defendant Medpace, where he had worked for the last six years, most recently serving in the role of Clinical Research Associate. Over the term of his career at Medpace, Plaintiff was a loyal and dedicated employee, and a top performer, ranking among the top earners in his position as a result of his diligent efforts and highly successful work performance.

1

3. On April 15 2020, Plaintiff was told that he was being laid off, effective immediately, along with a number of other employees, allegedly due to the COVID-19 Pandemic. This group layoff was one of at least two group layoffs Defendant conducted in 2020.

4. Upon information and belief at least 100 other employees who were also subject to the lay-offs were over the age of 40, while a disproportionate number of younger, less experienced employees were retained by Medpace.

5. Because Defendant claimed that Plaintiff's termination, as well as the termination of others, was based on the economic consequences of COVID-19, Plaintiff Paul Saleba was surprised to discover in May, less than a month after his termination, that Medpace was in fact actively recruiting new, younger employees. Defendant held a virtual recruiting event for Plaintiff's former position. Defendant Medpace refused to allow Plaintiff to register for the event. Plaintiff also saw that Clinical Research Associate Positions were open for applications on the Medpace website. In short, Plaintiff and other older individuals were fired from their jobs, which Defendant then attempted to fill with younger, outside applicants, despite claiming they could no longer afford to staff those positions due to the COVI-19 Pandemic.

6. Plaintiff and other employees over the age of 40 years old were offered a severance agreement that was conditional upon their waiving all rights to sue Defendant in relation to their terminations, including for age discrimination under the ADEA.

7. In violation of the OWBPA, Defendant failed to provide Plaintiffs with basic and statutorily mandated information required by the OWBPA, including but not limited to failing to allow Plaintiff and other employees over the age of 40 subject to lay off 45 days to consider the Release; failing to provide a list of employees including the ages and job titles of individuals terminated through the layoff programs to Plaintiff and other employees over the age of 40

subject to lay off; and failing to provide Plaintiff and other employees over the age of 40 subject to lay off with the eligibility factors used to determine who would be subject to lay off.

8. Defendant chose to hide the fact that it engaged in a pattern and practice of age discrimination. Defendant flouted the well-known requirements of the OWBPA, a law aimed at preventing age discrimination in mass layoffs and requiring Defendant to provide certain information in writing to Plaintiff and other employees over the age of 40 who were subject to layoff.

9. Defendant's blatant disregard of the OWBPA resulted in Plaintiff Paul Saleba, and similarly situated persons, signing invalid severance agreements allegedly waiving their rights under the ADEA in exchange for vastly insufficient consideration.

## II. PARTIES

10. Defendant Medpace is a clinical research organization based in Cincinnati, Ohio. Defendant is headquartered in Cincinnati, and maintains its principal place of business there.

11. Defendant is an "employer" within the meaning of the ADEA.

12. Plaintiff Paul Saleba is 67 years old and has worked for defendant for six years.

13. In addition to the above-described Plaintiff, various persons over the age of 40 who were employees of the Company, and who are similarly situated to the plaintiff, will file written consents to join this action as "opt-in" Plaintiffs.

## III. JURISDICTION AND VENUE

14. This is a "collective action" authorized and instituted under the ADEA, 29 U.S.C. §§ 621, et seq., which incorporates by reference Section 16 of the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. § 216.

15. This court has jurisdiction over the claims arising under the ADEA pursuant to 28 U.S.C. § 1331.

16. Venue is proper in the Southern District of Ohio, Western Division pursuant to 28 U.S.C. 1391(b) and 29 U.S.C. § 626 because a substantial part of the events giving rise to these claims occurred in the Southern District of Ohio, Western Division.

## IV. FACTUAL ALLEGATIONS

17. Plaintiff Paul Saleba was 67 years old at the time of his unlawful, termination from employment by Defendant Medpace. Saleba earned a Bachelor of Science in Allied Health, Cytotechnology from Indiana University and holds a CT certification from the American Society for Clinical Pathology.

18. Saleba is a member of numerous professional associations including the American Society of Cytopathology; the American Society for Cytotechnology; the American Society of Clinical Pathologists; the College of American Pathologists; and the Ohio Society of Cytology.

19. Throughout his long and successful career, Saleba has been a leader in inspections, compliance, and best practices within his field, including documentation requirements, safety, and record keeping. Saleba has conducted inspections developed and maintained operation procedures for hospital and private laboratories.

20. Saleba was hired by Defendant Medpace in June 2014.

21. As a Clinical Research Associate II for Medpace, Saleba conducted pre-study, initiation, monitoring, and close-out visits according to SOPs and GCP; he was responsible for overall site management for assigned sites including written and verbal communication and scheduling of monitoring visits and was responsible for completion of visit reports and maintenance of study-related databases.

22. Saleba also has extensive diagnostic Oncology experience with specialization in Oncology monitoring pancreatic tumors, solid tumors, and AML/GvHD.

23. At all times during Saleba's employment with Medpace, he received positive performance reviews and was awarded raises in salary in recognition for his hard work.

24. On April 15, 2020, Saleba was notified of his involuntary termination by Medpace effective that same day.

25. Medpace advised Saleba that Defendant was forced to reduce its workforce due to the COVID-19 Pandemic, that his position was being eliminated, and that his selection for layoff was based on "various considerations."

26. On the day of his termination, Saleba was given a copy of a Separation Agreement and General Release ("the Agreement") that purported to include waiver of claims under the ADEA in exchange for certain sums allegedly representing four weeks of pay. See Exhibit 1.

27. Saleba was advised that he had 15 days, or until April 30, 2020, to consider whether to execute the Agreement.

28. Upon information and belief, Medpace laid off over 100 employees at or around the time of Saleba's lay off.

29. Saleba was never provided with any information required by the OWBPA regarding the names and positions of other employees who were subject to lay off, nor was he provided with any information as to the eligibility factors used by Medpace to determine which employees were subject to lay off.

30. Saleba was not given 45 days to review and consider the Agreement, nor was he advised that he was entitled to 7 days after execution of the Agreement to revoke same, both required by the OWBPA.

31. On information and belief, the other employees over the age of 40 subject to the 2020 lay-offs were likewise offered severance agreements that purported to include a waiver of their rights under the ADEA, but none of the employees were provided with the requisite time to review and/or revoke their Agreements as required by the OWBPA, nor were they provided with the requisite information on names and positions of employees subject to lay off or the eligibility factors used to determine who would be laid off.

32. The Agreement tendered to Saleba violated the requirements of the OWBPA. Upon information and belief the agreements tendered to the other older employees also subject to lay off in 2020 likewise violated the requirements of the OWBPA.

33. Medpace did not advise Saleba or other employees over the age of 40 of their right to seek legal advice. Most importantly, Medpace deliberately ignored the requirements of the OWBPA to provide information about the ages of both terminated and retained employees so Saleba and other opt-in class members could not determine whether their age may have been a factor in their terminations.

34. Medpace violated the OWBPA in order to disguise its selections and cover up its unlawful and illegal termination of employees in violation of the ADEA.

35. Medpace also failed to provide the criteria used in the selection process, in violation of the OWBPA.

36. Saleba signed the severance offer. Upon information and belief, approximately 100 employees over the age of 40 also signed the agreements tendered to them, not realizing that Medpace had intentionally violated the OWBPA.

37. The releases signed by Saleba and other collective action opt-in members are not valid with respect to the release of their federal age discrimination claims.

38. At the time of Saleba's termination in 2020, Defendant Medpace retained other younger and less qualified employees.

39. Less than a month after his termination, Saleba learned that Medpace was actively recruiting new, younger employees, including recruiting employees for Saleba's former position.

40. Defendant held a virtual recruiting event for Plaintiff's former position.

41. Defendant Medpace refused to allow Plaintiff to register for the event and prevented him from applying for his former position for which he was fully qualified.

42. Saleba also discovered that Medpace was actively accepting applications for Clinical Research Associate positions on the Medpace website. Plaintiff and other employees who were over the age of 40 were fired from their jobs because of their age and in violation of the ADEA.

43. Defendant Medpace used the COVID-19 Pandemic as an excuse to institute a lay off to shed older workers while retaining younger, less qualified employees and actively recruiting younger, outside applicants, despite claiming they could no longer afford to staff those positions due to the COVID-19 Pandemic.

44. Medpace's actions constitute illegal and discriminatory conduct and violate the ADEA and the OWBPA.

## V. COLLECTIVE ACTION ALLEGATIONS

45. Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

46. Plaintiff brings collective claims under the ADEA pursuant to Section 16(b) of the Fair Labor Standards Act, ("FLSA"), 29 U.S.C. § 216(b), on behalf of himself and all other Medpace employees age 40 and over who have been terminated as part of a layoff since January 1, 2020, and as a result of Medpace's unlawful actions.

47. Plaintiff and members of the collective action are similarly situated with respect to their claims that Medpace violated the OWBPA and terminated their employment based on their age in violation of the ADEA.

48. Claims for violations of the ADEA may be brought and maintained as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b), for all claims asserted by the ADEA Collective Action Plaintiffs who opt-in to this action because the claims of Plaintiff Saleba are similar to the claims of the ADEA Collective Action Opt-in Class.

49. Plaintiff Saleba and the ADEA Collective Action Plaintiffs are (a) similarly situated, and (b) subject to Medpace's common policies of failing and/or refusing to comply with the requirements of the OWBPA that govern the severance agreements presented to Plaintiff Saleba and the Collective Action Plaintiffs in connection with their terminations, and (c) are subject to Medpace's common practice of terminating Plaintiff Saleba and Collective Action Plaintiffs because of their age, while retaining and/or hiring younger, less experienced and/or less qualified workers, in violation of the ADEA.

## VI. RESORT TO ADMINISTRATIVE PROCEEDINGS

50. Within the time proscribed by 29 U.S.C. 626(d) of the ADEA, Plaintiff Paul Saleba, by a written charge, on behalf of himself and all other persons similarly situated filed a

charge and complaint of age discrimination against the Defendant Medpace under the ADEA with the federal Equal Employment Opportunity Commission ("EEOC"). In substance, such charges asserted that Defendant's decision to terminate Plaintiff's employment, and other similarly situated persons' employment, at its Cincinnati facility constituted age discrimination against plaintiff and all other persons similarly situated in that it wrongfully and involuntarily terminated them from said employment on the basis of age.

## COUNT I

### Violations of the OWBPA

51. Plaintiff realleges the foregoing as if fully rewritten herein.

52. The same day Saleba was terminated in an alleged reduction in force, a severance offer was made to Plaintiff conditioned upon waiver of all claims against the company, including claims under the ADEA.

53. The severance agreement presented to Saleba breached nearly every requirement of the OWBPA, including the OWBPA's required provisions designed to make any waiver of rights under the ADEA knowing and voluntary.

54. Upon information and belief, Defendant has previously complied with the OWBPA in other terminations prior to the mass layoffs in 2020, and its breaches were designed with a malicious intent.

55. Plaintiff and other similarly situated employees were offered and signed Agreements which purported to be agreements to a release of their claims under the ADEA.

56. The severance offered to Plaintiff constituted four weeks of base pay.

57. Plaintiff signed the severance agreement; nevertheless, because Defendant violated the requirements of the OWBPA, Plaintiff is entitled to bring this action and pursue his claims under the ADEA.

58. Accordingly, Plaintiff and similarly situated employees are entitled to declaratory judgment and injunctive relief, including an Order advising them that the Agreement is invalid because it fails to comply with the requirements of the OWBPA, and that therefore (1) they have not waived any claims under the ADEA, (2) that any time limitations for filing a Charge of Discrimination or lawsuit are tolled, (3) that they may retain the severance already paid; and (4) that they may pursue such ADEA claims, including claims for wrongful termination, as provided for under the statute. Order should also direct Defendant Medpace to provide Plaintiff Saleba and similarly situated former employees with all information required to be provided under the OWBPA, including but not limited to:

> the job titles and ages of all individuals eligible or selected for lay off as part of the 2020 Layoffs and the ages of all individuals in the same job classification or organizational unit who were not eligible or selected for lay off;
>
> any class, unit, or group of individuals covered by the layoff, and eligibility factors for the lay-offs
>
> and any and all additional information required by the OWBPA, including 45 days to consider any waiver and severance offer and a seven day revocation period for same, to which they are entitled before waiving any claims under the ADEA and OWBPA.

10

## COUNT II

## Age Discrimination In Violation Of The ADEA

59. The Plaintiff realleges each and every allegation set forth in the foregoing as if fully rewritten.

60. It is unlawful for an employer to "discriminate against an individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age" or to "limit, segregate or classify [ ] employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect the status of an employee because of such individual's age." ADEA, 29 U.S.C. § 626.

61. Plaintiff Saleba is over 40 years of age and is therefore a member of a protected class of employees under the ADEA.

62. Plaintiff was an employee of Defendant Medpace at Defendant's Cincinnati facility from June 2016 until he was unlawfully terminated from his position by Medpace on April 15, 2020.

63. On April 15, 2020, Defendant abruptly terminated Plaintiff's employment because of his age, in violation of the ADEA.

64. Plaintiff, and other similarly situated employees who were also subject to lay off in 2020 by Defendant Medpace are older, more qualified, and more experienced than the younger employees who were retained and/or hired following the 2020 layoffs.

65. Defendant has intentionally and willfully engaged in a series of unlawful acts, practices, policies, and procedures in violation of the ADEA.

66. Defendant's unlawful conduct directly and proximately caused Saleba and the Collective Action Opt-in Plaintiffs to suffer damage for which they are entitled to judgment.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests the following relief:

(a) An Order permitting this case to proceed as a collective action;

(b) Prompt notice, pursuant to 29 U.S.C. §216(b) to all class members that this litigation is pending and that they have the right to "opt-in" to this litigation;

(c) Back pay;

(d) Liquidated damages;

(e) Front pay;

(f) Lost benefits, including but not limited to lost pension or retirement benefits;

(g) Declaratory judgement that the Agreement signed by Saleba and similar agreements signed by the Collective Action Opt In Plaintiffs are not knowing and voluntary waivers of their rights under the ADEA;

(h) Injunctive and affirmative relief requiring that the Defendant reinstate Plaintiff Saleba and the Collective Action Opt in Plaintiffs;

(i) Rescission of the Release of ADEA claims in Plaintiff Saleba's Agreement and rescission of Collective Action Opt-in Plaintiffs' Release of ADEA claims in the severance agreements they signed;

(j) Attorney fees; and

(k) Such other relief as may be appropriate.

Respectfully submitted,

*/s/ Randolph H. Freking*
Randolph H. Freking (0009158)
Trial Attorney for Plaintiff
Freking Myers & Reul LLC
600 Vine Street, Ninth Floor
Cincinnati, Ohio 45202
Phone: (513) 721-1975/Fax: (513) 651-2570
*randy@fmr.law*

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

*/s/ Randolph H. Freking*